United States District Court
Middle District of North Carolina
Case No. 1:21-cv-00847

| | |
|---|---|
| Marilyn Hambrick | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | ) |
| | ) |
| Lincoln Life Assurance Company of Boston, | ) |
| | ) |
| | ) |
|       Defendant. | ) |
| | ) |

## Complaint

This is plaintiff Marilyn Hambrick's complaint against defendant Lincoln Life Assurance Company of Boston ("Lincoln").

### Nature of Controversy

1.    This is a claim for long-term disability benefits provided under an employee welfare benefit plan adopted by Ms. Hambrick's employer, PRA Health Sciences, and insured by Lincoln. Ms. Hambrick seeks to recover from Lincoln long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The relief Ms. Hambrick seeks is a determination that she is entitled to long-term benefits retroactive to May 14, 2021, prejudgment interest, monthly benefits for as long as she remains entitled to benefits under the terms of the Policy, and an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

### Parties, Jurisdiction, and Venue

2.    Ms. Hambrick is a citizen and resident of Orange County, North Carolina.

3.      Lincoln is an insurance company and is authorized to conduct business in this state by the North Carolina Department of Insurance.

4.      The Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 1132(e)(1). Venue is proper in this district pursuant to 29 U.S. C. § 1132(e)(2) because acts and occurrences that gave rise to Ms. Hambrick's claim took place in this district.

<u>Additional Facts</u>

A.      <u>Policy Provisions</u>

5.      PRA Health Sciences provided disability coverage to Ms. Hambrick and other eligible employees pursuant to an insurance policy issued by Lincoln and bearing group policy number GD/GF3-850-291839-01 (the "Policy"). The Policy obligates Lincoln to make eligibility determinations for short-term and long-term disability benefits and to pay policy benefits from its funds.

6.      The Policy provides different long-term disability benefit levels for various groups of employees. Class 2 includes employees who elected "the buy-up plan." An election of the buy-up plan entitles covered employees to an increased benefit, from 50% of Basic Monthly Earnings to 60% of Basic Monthly Earnings, subject to a maximum monthly benefit of $10,000 per month, less certain offsets. Ms. Hambrick elected the buy-up plan and is therefore a Class 2 employee.

7.      The Policy provides the following definition of "disability" and "disabled:"

"Disability" or "Disabled", with respect to Long Term Disability, means:

i.      if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as

2

a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

"Own Occupation", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

8.    Ms. Hambrick was 65 years old on the date she became eligible for long-term disability benefits. The Policy provides that the maximum duration of benefits for employees who become eligible for long-disability benefits at age 65 is 24 months. Therefore, the applicable definition of disability for Ms. Hambrick's entire maximum benefit period is "Own Occupation."

B.    <u>Ms. Hambrick's Job at PRA Health Sciences</u>

9.    PRA Health Sciences is a clinical research organization. It provides clinical drug development services, including data management, statistical analysis, clinical trial management, medical writing, and regulatory and drug development consulting.

10.    Ms. Hambrick worked as a Level 3 (Advanced Level) Clinical Research Associate. Her job description provides:

3

> The Clinical Research Associate will monitor the progress of clinical studies at investigative sites or remotely, and ensure clinical trials are conducted, recorded, and reported in accordance with the protocol, standard operating procedures (SOPs), ICH-GCP, and all applicable regulatory requirements.

Her main job responsibilities were to implement and monitor clinical trials to ensure that sponsor and investigator obligations were being met and were compliant with applicable regulatory requirements and ICH-GCP guidelines; to review and verify the accuracy of clinical trial data collected; to provide regular site status information to team members and trial management; and to complete monitoring activity documents as required by PRA's standard operating procedures and contractual obligations. Because clinical trials were conducted at remote locations, the Clinical Research Associates job required significant travel.

11.     Lincoln recognized that Ms. Hambrick's job required lifting up to 25 pounds and met the definition of "medium" work functionality because her job involved a lot of travel, walking, and carrying, and prolonged sitting and standing.

C.     Ms. Hambrick Discontinued Working on August 27, 2019

12.     Ms. Hambrick went out of work on August 27, 2019 due to lumbar spine pain; pain and weakness in her arms, elbows, forearms, hands, and fingers; balance problems; and reduced hand coordination.

D.     Ms. Hambrick Attempted to Return to Work

13.     Ms. Hambrick attempted to return to work on November 18, 2019 and worked through November 29, 2019 but had to discontinue working because of her

increased back pain. She was unable to continue working due to the amount of sitting, standing, lifting, carrying, and traveling required by her job.

E.    Lincoln Applied for Long-Term Disability Benefits

14.    Lincoln approved Ms. Hambrick for short-term disability benefits for the entire maximum benefit period of 16 weeks. Ms. Hambrick applied for long-term disability benefits. Lincoln informed Ms. Hambrick by a letter dated December 27, 2019 that her long-term benefits claim was under consideration.

F.    Ms. Hambrick's Initial Appointments with her Pain Specialist, Dr. Bai

15.    Ms. Hambrick had her first appointment with Dr. Peng Bai at Carolina Spine Center on December 17, 2019. She was referred by Dr. Mark Mikles for a lumbar epidural injection and pain management. She complained of back pain that had flared up in November 2019 after she attempted to return to work. Dr. Bai recommended a lumbar epidural steroid injection or a medial branch block for diagnostic and possible therapeutic benefits, increasing Ms. Hambrick's dosage of Tramadol, and a lumbar spine MRI examination. Dr. Bai wrote in his examination report, "This is a difficult case as patient has multiple factors contributing to her chronic pain."

16.    Ms. Hambrick underwent a lumbar spine MRI on December 24, 2019. The report states that Ms. Hambrick suffers from moderate compression fractures at L1 and L3, unchanged from November 2, 2018; mild retropulsion at L1 and L3; multilevel degenerative disc disease and facet arthropathy; moderate spinal canal stenosis at the L2-L3 level, secondary to degenerative disc disease and the retropulsed bone fragment at L3; and multilevel neural foraminal narrowing.

5

17.     Dr. Bai next saw Ms. Hambrick on January 2, 2020. She reported that she traveled for work, which exacerbated her pain; prolonged walking increased her pain; resting, laying on her side, and other positional changes helped to alleviate her pain. She described her pain as stabbing in her lower back, heavy feelings in her low back, and electrical sensations like a buzzing all over her body. Dr. Bai's physical exam findings include that Ms. Hambrick was anxious, fatigued, and tearful; her range of motion was restricted with flexion limited to 50 to 60 degrees due to pain and extension limited to 10 degrees due to pain; mild tenderness to palpation at L3; and a negative Waddell's sign. Dr. Bai recommended physical therapy and provided a work release note for one month, until the next appointment.

18.     The same day, Dr. Bai provided a Work Note which stated that Ms. Hambrick should remain out of work through February 2, 2020.

19.     Ms. Hambrick next saw Dr. Bai on January 24, 2020 for medication management. Dr. Bao provided another out-of-work note through March 20, 2020.

G.     A Lincoln Nurse Determined that Ms. Hambrick was Disabled and that her Condition was Likely to be Permanent

20.     Ms. Hambrick's claim was reviewed by a Lincoln Nurse Disability Consultant. Her report, dated January 23, 2020, states:

> Based on the chronicity of the back pain, evidence of persistent fractures at 2 levels, escalation of care to include PT and then possible further interventions, r/ls of occasional sit / stand / walk with the ability to change position as needed for comfort, no climbing, bending or twisting at the waist and no lifting in excess of 10 pounds on a less than occasional basis are supported for an indefinite period of time.
>
> It is unclear if claimant will recover to her premorbid level of functioning due to the chronic and progressive nature of the degenerative changes.

6

Recommend updated records be obtained every 4 months. If there is no improvement, then the r/ls will continue likely ongoing and permanently and annual updates may be indicated.

## H.    Lincoln Approved Ms. Hambrick's Claim Effective January 3, 2020

21.    Lincoln notified Ms. Hambrick, by a letter dated February 11, 2020, that her long-term disability claim had been approved effective January 3, 2020. The letter states, "Based on the medical and vocational information contained in our claim file, we have determined that you are unable to perform the duties of your occupation."  Lincoln commenced paying Ms. Hambrick a monthly benefit of $6,328.55.

## I.    Lincoln Again Determined that Ms. Hambrick's Condition was Likely to be Permanent

22.    Lincoln Claim Note 12, dated June 5, 2020, states that Lincoln determined that Ms. Hambrick's restrictions and limitations continued to be supported, possibly permanently.

23.    Dr. Bai completed a Lincoln Restrictions Form on June 11, 2020. He wrote that Ms. Hambrick's work capacity was "sedentary" and she could not lift over 10 pounds, sit over 30 minutes, stand more than 10 minutes, and could not bend or twist.

24.    Lincoln informed Ms. Hambrick by a letter dated July 2, 2020 that it was reviewing her claim and stated that Ms. Hambrick's benefits would be suspended if Lincoln did not receive all requested records from her providers by August 14, 2020.

7

J.  Lincoln Determined that Ms. Hambrick was Impaired Indefinitely from Anything but Sedentary Work

25.  Lincoln Claim Note 18, dated August 18, 2020, states:

Based on the available medical information on file, claimant is currently impaired from anything greater than sedentary because of the compression fractures. She has instability and at risk for further progression of her symptoms if she did anything strenuous. Impairment would be indefinitely. Review for voc.

K.  Lincoln Advised Ms. Hambrick that She may Qualify for Social Security Disability

26.  On September 19, 2020, Lincoln advised Ms. Hambrick that she "may qualify for Social Security disability benefits" and recommended a law firm to assist her with a claim. On December 4, 2020, a Lincoln representative called Ms. Hambrick to encourage her to apply for Social Security disability benefits.

L.  Lincoln Offered Ms. Hambrick Vocational Rehabilitation Services

27.  Lincoln recognized that Ms. Hambrick likely would not be able to return to her occupation as a Clinical Research Associate and offered her vocational rehabilitation services so that she could be trained for a different occupation.

28.  A Lincoln claim representative wrote in report dated December 17, 2020, that Ms. Hambrick had been referred to vocational rehabilitation "for possible assistance finding nursing work that does not require travel." Ms. Hambrick indicated that she was not ready to consider returning to work due to her unresolved back pain.

M.  Lincoln Hired a Private Investigator to Conduct Surveillance

29.  The next day, December 18, 2020, Lincoln hired a private investigator to conduct three days of surveillance of Ms. Hambrick.

8

30.     Lincoln obtained a report of surveillance dated January 5, 2021. The report states that the investigator conducted surveillance of Ms. Hambrick from December 28, 2020 through December 30, 2020. The surveillance lasted approximately eight hours each day. During those days of surveillance, the investigator obtained only eight minutes and 32 seconds of video recording that depicted Ms. Hambrick walking onto her deck to feed her cat and driving to and from a Food Lion grocery store.

31.     On December 28, 2020, the investigator began surveillance at 7:20 a.m. and stopped at 3:30 p.m. Ms. Hambrick was not observed during that time.

32.     On December 29, 2020, the investigator began surveillance at 8:15 a.m. and concluded at 4:17. Ms. Hambrick was recorded on surveillance beginning at 11:37:15 a.m. and continuing until 11:39:17. During those two minutes and two seconds, Ms. Hambrick exited her back door onto her deck, bent over four times with bent knees for a total of ten seconds, possibly to feed her cat. The remainder of the time, Ms. Hambrick walked or stood on her deck, but her movements are difficult to see because the recording was mostly obscured by trees.

33.     On December 30, 2020, the investigator began surveillance at 7:00 a.m. and quit at 3:01 p.m. Ms. Hambrick left her home at approximately 8:35 a.m., proceeded to a Food Lion grocery, where she remained until approximately 9:10 a.m., returned home around 9:50 a.m., and carried her plastic bags of groceries from her vehicle into her residence through a side door located in her carport. The surveillance video shows Ms. Hambrick in the Food Lion parking lot for four minutes and three seconds, during which time she stood next to her car with a shopping cart, transferred approximately 14 plastic

9

bags of groceries from the cart to the back seat of her car, pushed the cart back toward the store, and then pulled away from her parking spot. After Ms. Hambrick returned home, the investigator recorded approximately two minutes and fifty-seven seconds of footage that showed Ms. Hambrick unloading her groceries and carrying the bags into her carport. The recording taken after Ms. Hambrick returned home is of extremely poor quality. The camera was shaking badly, and most of Ms. Hambrick's activities were obscured by two large trees and her home.

N.     Lincoln Hired a Physician to Review Ms. Hambrick's Claim

34.     Lincoln obtained a report from Gale G. Brown, Jr., MD, who is board-certified in physical medicine and rehabilitation and internal medicine. Dr. Brown's report, dated February 9, 2021, indicates that he was aware that Lincoln had determined that Ms. Hambrick's occupation was performed at the sedentary physical demand level in the national economy.

35.     Dr. Brown agreed that Ms. Hambrick was suffering from chronic low back pain, lumbosacral spondylosis, lumbar radiculopathy, a wedge compression fracture in her lumbar vertebra, hypothyroidism, and hypertension. Dr. Brown concluded that Ms. Hambrick's reasonable restrictions and limitations included occasional standing, walking, and driving, with an allowance for position change as needed; occasional lifting and carrying up to 10 pounds, with avoidance of lifting above the chest or below knee level, and frequent sitting with position changes as needed. Dr. Brown added, "Given the chronic refractory nature of the insured's spinal pain, the above physical restrictions/limitations are likely long term . . . ." He wrote that Ms. Hambrick "should be

10

capable of at least part-time work, and possibly full-time work from at least December 2020 to the present and ongoing."

36.     Lincoln Claim Note 49, dated April 8, 2021, states:

Based on the available medical information on file, claimant is currently impaired from anything greater than sedentary. Because of the compression fractures, she has instabilityand (sic) at risk for further progression of her symptoms if she did anything strenuous. Impairment would be indefinitely. Good candidate for Voc.

O.     Lincoln's Transferable Skill Analysis

37.     On April 23, 2021, Lincoln referred Ms. Hambrick's file to a vocational specialist. The vocational specialist wrote a report titled Transferrable Skills Analysis dated April 23, 2021 and stated therein that a transferable skills analysis was completed "to assess Ms. Hambrick's skills to determine if alternative occupations exist in the national economy." The vocational representative listed the occupation of "Director, Research and Development," DOT Code 189.117-014, as the alternative occupation. The report states:

The Transferable Skills Analysis identified occupations that are within Ms. Hambrick's physical abilities and within her identified skill level. The occupations (sic) meet her gainful amount of $6,838.25 in the national economy. Based on further review of Ms. Hambrick's work history and skills acquired, it is reasonable that she would have the ability to earn her per-disability (sic) wages in her own occupation.

38.     The problem with the Transferable Skills Analysis is that the Policy definition of disability that applies to Ms. Hambrick for the maximum benefit period of her claim is "Own Occupation." The occupation identified in the Transferable Skills Analysis, Director, Research and Development, DOT Code 189.117-014, is a different occupation and is therefore irrelevant to a determination of Ms. Hambrick's claim.

11

Moreover, Lincoln performed no analysis to determine how Ms. Hambrick's job, Clinical Research Associate for PRA Health Sciences, is performed in the national economy.

39.     Nevertheless, Lincoln used the occupation "Director, Research and Development" as a basis for terminating Ms. Hambrick's benefits. The reason it did so was that the occupational description for "Director, Research and Development" includes a "sedentary" physical capabilities level, whereas Ms. Hambrick's actual occupation, Clinical Research Associate, is rated as a "medium" occupation, and Lincoln had determined that Ms. Hambrick could not perform her job. Claim Note 49. Lincoln decided to terminate Ms. Hambrick's benefits because the evidence did not show that she had a less than sedentary level of impairment. Claim Note 54, dated May 11, 2021.

P.     Lincoln Terminated Ms. Hambrick's Benefits Effective May 13, 2021

40.     Lincoln advised Ms. Hambrick by a letter dated May 19, 2021, that her benefits were not payable beyond May 13, 2021. Although Lincoln quoted the correct definition of disability, Lincoln did not consider Ms. Hambrick's occupation "as it is normally performed in the national economy." Rather, Lincoln ignored Ms. Hambrick's actual job requirements and analyzed her disability claim as if her occupation was Director, Research and Development, a sedentary position.

Q.     Ms. Hambrick Appealed Lincoln's Denial Decision

41.     Ms. Hambrick timely appealed Lincoln's termination of her long-term disability claim on June 9, 2021. She submitted written comments and the report of her lumbar spine MRI dated February 26, 2021.

12

R.    The February 26, 2021 Lumbar MRI Report

42.    Ms. Hambrick's February 26, 2021 lumbar MRI report showed mild disc bulging at T12-L1 with mild retropulsion of the dorsal reflex into the spinal canal and mild encroachment upon the central canal and moderate left and mild right foraminal stenosis; at L1-L2, mild disc bulging, mild facet arthropathy, mild flattening of the ventral thecal sac, and mild bilateral foraminal stenosis; at L2-L3, mild bulging of the disc, mild retropulsion of the superior dorsal cortex of L3 compression deformity into the spinal canal, moderate degenerative facet and ligamentum flavum hypertrophy, moderate central canal stenosis, and mild to moderate left and mild right foraminal stenosis; at L3-L4, mild disc osteophyte complex, moderate degenerative facet arthropathy and ligamentum flavum hypertrophy, and mild to moderate central canal stenosis; at L4-L5, moderate loss of disc height, broad-based disc protrusion, moderate degenerative facet arthropathy, moderate central canal stenosis, and mild to moderate left and mild right foraminal stenosis; at L5-S1, moderate loss of disc height, mild disc osteophyte complex, mild facet arthropathy, mild constriction of the thecal sac, and mild bilateral foramina stenosis.

S.    Lincoln Retained Dr. Gary Smoot to Review Ms. Hambrick's Claim

43.    On June 18, 2021, Lincoln advised Ms. Hambrick that it had referred her file for a review by a board-certified physician. The physician selected by Lincoln was Dr. Gary L. Smoot, who is board-certified in pain management and physical medicine and rehabilitation.

13

44.     On July 1, 2021, Lincoln called Ms. Hambrick to schedule a medical examination by Dr. Smoot. Ms. Hambrick objected to an in-person examination by Dr. Smoot due to the risks associated with the COVID virus. As a result, Lincoln requested Dr. Smoot to review Ms. Hambrick's file and respond to questions.

45.     Dr. Smoot submitted a report dated July 28, 2021. He noted that Ms. Hambrick's February 26, 2021 lumbar MRI showed a mild compression deformity of approximately 50% at L3, a 40% compression deformity of the superior endplate of L1 with mild retropulsion of the superior dorsal cortex into the spinal canal, and no marrow edema to suggest an acute fracture. Dr. Smoot wrote that Ms. Hambrick suffered from chronic low back pain, lumbosacral spondylosis without myelopathy or radiculopathy, lumbar spinal stenosis, a wedge compression fracture of the first vertebrae sequela, and a wedge compression fracture of the third lumbar vertebra sequela.

46.     Dr. Smoot, in response to Lincoln's inquiry whether Ms. Hambrick had "any supported level of impairments which translates into restrictions and limitations," wrote, "This is a difficult question to answer." He added, "I would suspect that some type of limitation would be expected, with consideration of the findings on the most recent lumbar MRI and the patient's age." Dr. Smoot, in response to Lincoln's question about Ms. Hambrick's restrictions and limitations, wrote, "Any functional impairment based on the findings should not stop her from all types of employment. There appears to be videotape evidence showing that she may be able to achieve a much higher functional occupation. Dr. Smoot wrote in his report that "Part-time employment should be an easily

14

obtainable goal, with possible restrictions, although her latest records would be helpful to determine her actual limitations."

47.     Dr. Smoot noted that he had spoken with Dr. Bai. He wrote that Dr. Bai was open to Dr. Smoot's suggestion that Ms. Hambrick undergo a functional capacity evaluation to determine her current physical capabilities and added that "I believe we are both in agreement that she should be able to perform some type of occupation."

48.     Dr. Smoot did not comment on whether Ms. Hambrick could return to her job at PRA Health Sciences and was not provided with Ms. Hambrick's job description or any other occupational information for the job.

T.     Dr. Bai Provided an Out-of-Work Note in August 2021

49.     Lincoln obtained a "Work Note" from Dr. Bai in which he wrote that he had last seen Ms. Hambrick on August 7, 2021 and that she should remain out of work from August 21, 2021 through February 21, 2022.

U.     Lincoln Determined that Dr. Smoot's Review was Inconclusive

50.     Lincoln's "Claim Note 80," dated July 30, 2021, states, "Peer review is inconclusive. Referred for a qualified review."

V.     Lincoln Obtained a Claim File Review from Dr. Jamie Lewis

51.     After rejecting Dr. Smoot's report as "inconclusive," Lincoln turned to another physician, Dr. Jamie Lewis, to review portions of Ms. Hambrick's file. Dr. Lewis is board-certified in physical medicine and rehabilitation and pain medicine. Dr. Lewis frequently provides consulting services for disability insurance carriers, including

Lincoln. Dr. Lewis was not provided with Ms. Hambrick's job description or Dr. Smoot's report.

52.     Dr. Lewis wrote in his report dated August 9, 2021 that Ms. Hambrick's "supported diagnoses" included "low back pain, radiculopathy, lumbar region, spondylosis without myelopathy or radiculopathy, lumbosacral region, and wedge compression fracture of unspecified lumbar vertebra, initial encounter for closed fracture." Dr. Lewis concluded that the findings shown in Ms. Hambrick's February 26, 2021 lumbar MRI report "do correlate with the claimant's back pain." He noted that Ms. Hambrick's physical examinations included limited lumbar range motion and an antalgic gait consistent with her MRI findings.

53.     Dr. Lewis concluded that Dr. Bai's recommended restrictions and limitations, which included no lifting over 10 pounds, no sitting over 30 minutes, no standing over 10 minutes, and no bending and twisting, were "slightly over-restrictive" given Ms. Hambrick's examination and diagnostic findings and her activities observed on surveillance. He concluded that given the absence of significant motor weakness or sensory deficits she should be able to work full-time with the following restrictions and limitations:

> Lifting and carrying: 20 pounds occasionally (up to 1/3 of time) and less than 10 pounds frequently (1/3-2/3 of time)
> Pushing and pulling: 20 pounds occasionally (up to 1/3 of time) and less than 10 pounds frequently (1/3-2/3 of time)
> Sitting: 60 minutes at a time up to 8 hours per work day with the ability for self-positional change as necessary or [sic] comfort
> Standing: 20 minutes at a time up to 4 hours per day
> Walking: 20 minutes at a time up to 4 hours per day
> Walking on uneven ground: Never

Climbing ladders: Never
Operating Heavy Equipment: Never
Balancing: Never
Crawling: Never
Bending at waist: Occasionally (up to 1/3 of time)
Stooping: Occasionally (up to 1/3 of time)
Kneeling: Occasionally (up to 1/3 of time)
Crouching: Occasionally (up to 1/3 of time)
Climbing Regular Stairs: Occasionally (up to 1/3 of time)
Reaching Overhead: Unrestricted
Reaching Desk Level: Unrestricted
Reaching Below Waist: Occasionally (up to 1/3 of time)
Handle, Finger and Feel: Unrestricted
Simple/Firm grasping: Unrestricted
Operate foot control: Unrestricted

He added, "Restrictions should be reassessed by 09/06/2021 with updated

documentation."

54.     Dr. Lewis wrote in his report that Ms. Hambrick's "pain complaints are

substantiated by the medical evidence provided for review." However, he added that "the

exam and diagnostic findings are not severe and the claimant's activities observed on

surveillance support a level of functionality" that did not preclude work activity with his

recommended restrictions and limitations.

W.     Dr. Bai's Response to Dr. Lewis' Report

55.     On August 10, Lincoln sent Dr. Bai a letter and Dr. Lewis' report and

requested comments. Dr. Bai circled the word "sitting" in Dr. Lewis' list of restrictions

and limitations and wrote "30 minutes" and "FCE pending. If not done, then I agree with

above." He signed the response on August 31, 2021

17

X.    Lincoln's August 10, 2021 Pre-Denial Letter

     56.    On August 10, 2021, Lincoln sent Ms. Hambrick a pre-denial letter. The letter enclosed a copy of Dr. Lewis' August 9, 2021 report and advised Ms. Hambrick that she could respond by August 31, 2021. The letter did not include any reference to Dr. Smoot's report. Lincoln did not send Ms. Hambrick Dr. Smoot's report before making its final decision, a violation of 29 C.F.R. § 2560.503-1(h)(4)(i).

Y.    Dr. Lewis' Addendum

     57.    In an addendum to his report dated September 9, 2021, Dr. Lewis stated that Dr. Bai's response did not change his opinion.

Z.    Lincoln's Evaluation of Ms. Hambrick's Occupation on Appeal

     58.    A Lincoln vocational case manager wrote a report dated September 16, 2021. The report incorrectly states that DOT occupational description for "Director, Research and Development" describes Ms. Hambrick's job as a Clinical Research Associate as it is performed in the national economy. The report states:

> The physical demand level of the job is heavier than the physical demand level of the occupation. In the national economy, the occupation requires sedentary work, whereas the job requires medium work. Based on the standard vocational resources outline above, coupled with my vocational expertise, part-time opportunity does exist in this occupation.

Lincoln did not send Ms. Hambrick the September 16, 2021 Occupational Analysis report before making its final decision, a violation of 29 C.F.R. § 2560.503-1(h)(4)(i).

AA.    Ms. Hambrick Responded to Lincoln's Pre-Denial Letter

     59.    On September 20, 2021, Ms. Hambrick responded to Lincoln's August 10, 2021 letter by e-mail and wrote:

18

I have provided you the information you requested, and I have sent you
the MRI, I have sent you the out of work note, I have not heard from you.
You have restricted/discontinued monies since May 2021, it is now 20-
Sep-202. It is not clear what else you need and why you continue to
extend the time.

BB. Lincoln Upheld its Decision to Terminate Ms. Hambrick's Claim

60. Lincoln informed Ms. Hambrick, by a letter dated September 24, 2021, that

her appeal had been denied. The letter cited Dr. Lewis' report as the basis for the denial.

Lincoln acknowledged that Ms. Hambrick may have continued to experience some

symptoms associated with her condition beyond May 13, 2021, however, the information

submitted did not contain physical exam findings, diagnostic test results, or other forms

of medical documentation that supported that Ms. Hambrick's symptoms remained of

such severity, frequency, and duration to result in restrictions and limitations that

prevented her from performing the material duties of her occupation after that date.

61. Lincoln's final denial letter referred to the report of Dr. Lewis but not the

report of Dr. Smoot. The failure to include an explanation of the basis for disagreeing

with or not following the views of Dr. Smoot violated 29 C.F.R. § 2560.503-1(j)(6)(i).

62. The letter further advised that Ms. Hambrick had exhausted her

administrative right to review and that she had the right to bring a civil action under

ERISA.

Claim for Relief
(29 U.S.C. § 1132(a)(1)(B) and (g))

63. The other allegations of this complaint are incorporated by reference.

64.     The Policy is an employee welfare benefit plan within the meaning of ERISA. Ms. Hambrick is covered by the Policy.

65.     Lincoln failed to provide Ms. Hambrick a full and fair review of her claim for benefits under the Policy.

66.     Due to Lincoln's failure to strictly adhere to the requirements of 29 C.F.R. §§ 2560.503-1(h)(4)(i) and 2560.503-1(j)(6)(i), Ms. Hambrick is entitled to pursue her available remedies under 29 U.S.C. § 1132(a)(1)(B) on the basis that Lincoln has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

67.     Ms. Hambrick is entitled to recover from Lincoln long-term disability benefits from May 14, 2021 to the date of judgment, with prejudgment interest, and continuing monthly benefits after the date of judgment for as long as she remains eligible under the terms of the Policy.

68.     Ms. Hambrick requests an award of attorney's fees and costs against Lincoln pursuant to 29 U.S.C. § 1132(g).

<u>Prayer for Relief</u>

Wherefore, having complained of Lincoln, Ms. Hambrick prays the Court for the following relief:

1.     A determination that due to Lincoln's failure to strictly adhere to the requirements of 29 C.F.R. §§ 2560.503-1(h)(4)(i) and 2560.503-1(j)(6)(i), Ms. Hambrick is entitled to pursue her available remedies under 29 U.S.C. § 1132(a)(1)(B) on the basis

that Lincoln failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

2.     A judgment that Lincoln is obligated under the terms of the Policy to pay Ms. Hambrick long-term disability benefits for the period from May 14, 2021 to the date of judgment, with prejudgment interest;

3.     A judgment that Lincoln is obligated to pay Ms. Hambrick monthly disability income benefits after the date of judgment for as long as she remains eligible for such benefits under the terms of the Policy;

4.     An award of attorney's fees and costs against Lincoln pursuant to 29 U.S.C. § 1132(g); and

5.     Such other relief as the Court deems just and proper.


November 2, 2021                     /s/ Andrew Whiteman
Date                                 Andrew Whiteman
                                             N.C. State Bar Number 9523
                                           Whiteman Law Firm
                                           5400 Glenwood Ave., Suite 225
                                           Raleigh, North Carolina 27612
                                           Tel: (919) 571-8300
                                           Fax: (919) 571-1004
                                           aow@whiteman-law.com

                                           *Attorney for plaintiff*